Mr. Justice MacArthur
delivered the opinion of the court:
The first question to be determined is whether we can make a decree in this case, as the land described in the bill of complaint is situated in the State of West Virginia, beyond the local boundaries of this jurisdiction. The rule is *471 now well settled that a court of equity will entertain a suit respecting the rights to real estate, although it is in another State or county, where jurisdiction of the parties has been acquired. In his equity jurisprudence, sec. 743, Mr. Justice Story says: “-It may therefore be proper to premise that a bill for a specific performance of a contract respecting land may be entertained by courts of equity, although the land is situate in a foreign country, if the parties are residents within the territorial j urisdiction of the country. The ground of this jurisdiction is that courts of equity have authority to act upon the person. JE quitas agit in personam. And although they cannot bind the land itself by the decree, yet they can bind the conscience of the party in regard to the land, and compel him to perform his agreement according to conscience and good faith; ” and he cites the celebrated decision of Lord Hardwicke in Penn vs. Lord Baltimore, 6 Ves., 444; also Port Arlington vs. Soulby, 3 Mylne & Keen, 104; Totten vs. Carteret, 2 Vern., 495; Sutton vs. Fowler, 9 Paige, 280, and many others. Perhaps the best definition of this doctrine is found in the decisions of the United States Supreme Court. In Massie vs. Watts, 6 Cranch., 148, after referring to those authorities, Chief-Justice Marshal says: “ Upon the authority of these cases and of others which are to be found in the books, as well as upon general principles, this court is of opinion that, in the case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree.” That was a suit brought in the circuit court of the United States for the district of Kentucky by a citizen of Virginia against á citizen of Kentucky in respect to lands in the State of Ohio, the defendant having obtained the legal title with notice of the equitable title of the plaintiff; and the' court made a decree compelling him to convey to plaintiff, on the ground that his taking the title in his own name was a fraud upon the plaintiff, and he thereby became his trustee.
The like doctrine was again fully recognized in Northern Illinois Railroad Company vs. Michigan Central Railroad Company, 15 How., 244, where the court say: “ If the court had acquired jurisdiction of the person by his being within the *472 State, they will compel him by attachment to do his duty under his contract or trust, and enforce the decree in rem by his executing and conveying or otherwise, as justice may require in respect to lands abroad.” It appears from these authorities that whenever the controversy arises out of contract or fraud, or involves the consideration of a trust in regard to lands in another State, the jurisdiction of a court of chancery will act upon the conscience of the person if found within the jurisdiction of the forum, and compel him to do what is required by justice and equity. The question now before us will be whether the present case is one of this character.
The substantial averments of the bill are that defendant W. G.W. Jaeger executed his promissory noteto complainant for 850,000, and also gave a deed of trust upon the lands in West Virginia to secure the payment of the note. Afterward complainant discovered that Jaeger’s title was defective by reason that the title to the land was in one Henry G. Thompson and the Malis. The defendant W. K. Jaeger, who is the son of W. G. W. Jaeger, acquired Thompson’s title, and the defendant Thomas D. Winchester acquired the Mali title, and conveyed the same to Jaeger, jr. The bill alleges, that Jaeger, sr., purchased the Mali title through said Winchester, and caused the same to be conveyed to said Winchester, and from Winchester to his son for the purpose of cheating and defrauding the complainant out of the debt secured by the trust-deed, and that, with a like fraudulent purpose, he caused and procured the conveyance from Thompson to his son, and that said conveyances were made for the use and benefit of the said Jaeger, sr., and for the purpose of covering up said fraud the same were made to his son, and that the defendant Ullman, at the time he took his conveyance, had full knowledge of these facts, and that the object of the conveyances, including his own, was to cheat and defraud'the complainant out of his just and equitable rights. Upon these facts, the case is clearly brought within the rule just announced. A clearer case of fraud and resulting trust could not be expressed, and if the allegations are supported by the evidence, this court has by all the eases cited jurisdiction of the cause. The facts in the case as to the fraudu *473 lent conduct of Jaeger, sr., and his son depend upon a mass, of testimony which it would require too much space and time to set forth. It represents the two Jaegers in a very bad light, and we cannot doubt of their bad faith and fraudulent practices toward the complainant.
From a careful consideration of the testimony, we have come to the conclusion that the whole transaction between Winchester and Jaeger the younger, in purchasing the Mali and Thompson titles, was in the interest of Jaeger, sr., and. was for his benefit, and the title thus acquired ought therefore to be held by them upon the same uses and trusts as are declared in the deed of trust executed by the elder Jaeger for the benefit of the complainant, Moore. The decree in this, respect must be affirmed.
The court below thought that the defendant Ullman was an innocent purchaser of an undivided oné-fourth of all this tract of land from Jaeger the younger. We think, however, that the testimony shows that he had full knowledge of all the facts, and was a confederate in the fraud. The decree must be so modified as to postpone the rights of Ullman, whatever they may be, to those of the complainant. The-defendant Jaeger, sr. to pay costs of this appeal.
Mr. Justice Humphreys read a dissenting opinion.